UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KRISTA MOODY,

               Plaintiff,               Case No. 1:21-cv-12485

v.                                      Honorable Thomas L. Ludington
                                       United States District Judge

MIDMICHIGAN MEDICAL
CENTER-MIDLAND,

               Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND**

      This is an employment-discrimination action brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 1202 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e17. Plaintiff is employed by Defendant as a casual-status Certified Registered Nurse Anesthetist. As such, she has no guaranteed hours and works when needed. She alleges that Defendant reduced her hours after she worked for a Detroit-area hospital because (1) Defendant regarded her as having COVID-19 and (2) the hospital served predominantly African American patients. She also claims that Defendant retaliated against her for filing a discrimination charge with the Equal Employment Opportunity Commission (EEOC).

      Defendant has filed a motion to dismiss, and Plaintiff has filed a motion for leave to file an amended complaint. Both motions will be granted in part and denied in part. As explained hereafter, Plaintiff has plausibly alleged claims for disability discrimination and retaliation, but she has not plausibly alleged that Defendant discriminated against her for associating with African American patients. Therefore, Plaintiff's disability-discrimination and retaliation claims may proceed, but her associational-discrimination claim will be dismissed.

I.

A.

In March 2020, Michigan Governor Gretchen Whitmer declared a state of emergency in response to the COVID-19 pandemic. *See* MICH. EXEC. ORDER NO. 2020-04 (Mar. 10, 2020). Many public officials, including the Governor, feared that the pandemic would overwhelm the healthcare system. And many healthcare workers traveled around the State to prevent that from happening. *See* ECF No. 1 at PageID.2.

On March 26, 2020, Plaintiff's supervisor, Scott Mango, emailed her and other MidMichigan employees to share his "opinion" on assisting other hospitals and "to point out some things that [he] hope[d] [MidMichigan employees] [were] considering." *Id.* at PageID.2; ECF No. 6-8 at PageID.69. Among those considerations were malpractice insurance, worker's compensation coverage, and the risk of "bringing [COVID-19] back to [their] family, colleagues, hospital, and community." ECF No. 6-8 at PageID.69. Mango concluded by stating that although he "[could not] direct [MidMichigan employees] [where to] work," he wanted them to at least "consider" the issues he had raised. *Id.*

At some point in March 2020, Plaintiff provided medical services at Providence Hospital in Southfield, Michigan—a predominantly African American community and, at the time, COVID-19 "hotspot."[1] ECF No. 1 at PageID.2. Despite his initial refrain from dictating where MidMichigan employees could work, Mango allegedly cancelled several of Plaintiff's shifts and filled them with CRNAs who did not assist "hotspot" hospitals like Providence. *Id.*

In April 2020, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). *Id.* at PageID.2. She claimed that Defendant

---

[1] It remains unclear whether Plaintiff worked at Providence before or after Mango's email.

"forced [her] to quarantine [her]self despite the fact that [she] had, and continue[d] to have, no symptoms [of COVID-19]." ECF No. 6-9 at PageID.72. She also claimed that Defendant "regarded her as having a disability." *Id.* In September 2021, the EEOC issued a right-to-sue letter. ECF No. 1 at PageID.2.

**B.**

In October 2021, Plaintiff brought this action under the ADA and Title VII. *Id.* at PageID.3. She alleges Defendant reduced her hours after she assisted Providence because (1) it regarded her as having COVID-19 and (2) it discriminated against her for associating with African American patients. *Id.* at PageID.3–5. Plaintiff also alleges that, after learning of the EEOC charge, Defendant retaliated by cancelling more of her shifts. *Id.* at PageID.5.

Defendant has filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant acknowledges reducing Plaintiff's hours but explains that it was forced to do so due to (1) an executive order that required healthcare providers to postpone non-essential medical procedures and (2) catastrophic flooding in Midland County in May 2020. ECF No. 6 at PageID.21–22 (citing MICH. EXEC. ORDER NO. 2020-17 (Mar. 20, 2020)). Defendant also denies regarding Defendant as having COVID-19 and discriminating against her for associating with African American patients. *Id.* at PageID.28. Further, Defendant contends that COVID-19 does not qualify as an "impairment" under the ADA, and that Plaintiff has not plausibly alleged an "association" with African American patients. *Id.* at PageID.28–29. As for Plaintiff's retaliation claim, Defendant argues that it could not have retaliated against her for the EEOC charge, as it did not learn of the charge until "*after* her work shifts were canceled." *Id.* at PageID.6 at PageID.32 (quoting ECF No. 1 at PageID.5).

In addition to filing a response brief, Plaintiff has filed a motion for leave to file an amended complaint "directly addressing the alleged deficiencies" raised by Defendant.[2] ECF No. 12 at PageID.180. Specifically, Plaintiff's amended complaint would add allegations (1) that Defendant "regarded Plaintiff as suffering from COVID-19," which Plaintiff describes as "a severe disease that causes both non-transitory and non-minor symptoms"; (2) that as part of her work at Providence Hospital, Plaintiff was "required to associate with, and provide medical treatment to, mainly African-American patients"; and (3) that Defendant retaliated in response to an April 2020 letter that her attorney sent, threatening legal action for the reduced hours. *Id.* at PageID.180–82.

Having reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to decide Defendant's motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

Defendant's motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint fails to state a claim if it does not contain allegations that support recovery under any cognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a complaint under Rule 12(b)(6), the district court must construe the complaint in the nonmovant's favor and accept the complaint's factual allegations as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment]

---

[2] Plaintiff neglected to respond to Defendant's Motion to Dismiss within the 21 days provided by local rule. *See* E.D. Mich. LR 7.1(e)(2). Three days after the deadline passed, she filed an unopposed motion for extension of time, explaining that she had missed the deadline due to a technical error. ECF No. 9. The very next day, she filed her response brief. ECF No. 10. Although Plaintiff has already filed her response, this Court still needs to resolve her motion for extension to determine whether her delay was excusable. *See* FED. R. CIV. P. 6(b)(1). Because Defendant does not oppose the motion and Plaintiff acted diligently in correcting her mistake, Plaintiff's motion for extension will be granted.

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

Plaintiff's motion for leave is governed by Federal Rule of Civil Procedure 15. As relevant here, Rule 15 allows a party to amend its pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Although leave to amend should be freely given "when justice so requires," *id.*, leave "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile," *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 787 (E.D. Mich. 2020) (quoting *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011)). A proposed amendment is futile "if the [claim, even with the] amendment[,] could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman*, 371 U.S. at 182); *see also Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (denying leave to amend when the proposed amended pleading consisted of conclusory allegations without factual support).

Because Defendant's sole argument against Plaintiff's motion to amend is that it would be futile, Defendant's motion to dismiss and Plaintiff's motion to amend turn on essentially the same issue: whether Plaintiff has plausibly alleged a claim for relief. *See Beydoun*, 871 F.3d at 469. That question is considered in detail below.

### III.

### A.

The first issue is whether Plaintiff has plausibly alleged an adverse employment action. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (noting that Title VII plaintiffs must allege an adverse employment action); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (same for ADA plaintiffs). Under both statutes, "adverse employment action" means a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (Title VII); *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (ADA). This includes "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[3] *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)).

Plaintiff alleges that she suffered an adverse employment action when Defendant cancelled shifts for which she would have earned approximately $80,000. ECF No. 10 at PageID.133; ECF No. 12-3 at PageID.195–96. Defendant argues that the cancellations do not qualify as an adverse employment action because Plaintiff is "a casual-status CRNA" and therefore "ha[d] no recognized work schedules." ECF No. 6 at PageID.27. But Plaintiff does not allege that Defendant cancelled her shifts because they were not needed; she alleges that Defendant "cancelled" her shifts and then gave them to other CRNAs who did not assist "hotspot" hospitals like Providence. *See* ECF No. 12-3 at PageID.196. The reasonable inference, then, is that Defendant intentionally

---

[3] The burden on retaliation claims is "less onerous" than the burden on discrimination claims. M*ichael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007). "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

deprived Plaintiff of $80,000 because she worked at Providence. Such a significant reduction in income would seem to qualify as a "significant change in benefits." *See Tepper*, 505 F.3d at 515.

Defendant's reliance on *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132 (1st Cir. 2013), is misplaced. In *MVM*, a detention officer who worked "as needed" alleged her employer retaliated against her sexual-assault complaint by "slash[ing] her work hours." *Id.* at 134–35, 140. The problem, the First Circuit explained, was that "she d[id] not support her rhetoric with hard proof." *Id.* The record "clearly show[ed] the hours she worked before and after the assault," and that those hours "fluctuated because of her lack of seniority and class schedule." *Id.* Thus, her "severe-work-reduction charge amount[ed] to no more than mere speculation." *Id.*

Defendant interprets *Medina-Rivera* as establishing that an as-needed employee may not maintain a retaliation claim because she has "no set hours to begin with." ECF No. 6 at PageID.27 (quoting *Medina-Rivera*, 713 F.3d at 140). But the problem with the claim in *Medina-Rivera* was evidentiary, not legal. *See Medina-Rivera*, 713 F.3d at 140. And unlike the plaintiff in *Medina-Rivera*, Plaintiff does not need to offer "hard proof" at this stage. *See id.* She merely needs to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To that end, she has alleged that Defendant deprived her of $80,000 income. Drawing all reasonable inferences in her favor, that allegation is sufficient under the ADA and Title VII.

**B.**

The next issue is whether Plaintiff has plausibly alleged a "regarded as" claim under the ADA. The ADA prohibits employers from discriminating against employees "on the basis of disability." 42 U.S.C. § 12112(a). "[D]isability" is defined as either (1) "a physical or mental

impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* § 12102(1).

In 2008, "Congress liberalized the 'regarded as having an impairment' avenue of proving a disability." *Harrison v. Soave Enterprises L.L.C.*, 826 F. App'x 517, 525 (6th Cir. 2020). Previously, "a plaintiff was required to show that her employer (1) 'mistakenly believe[d] that [she] ha[d] a physical impairment that substantially limits one or more major life activities' or, alternatively, that the employer (2) 'mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Id.* (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488 (1999)).

Now, an employee needs to demonstrate merely that "he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." *Id.* at 526 (quoting 42 U.S.C. § 12102(3)(A)).

Plaintiff alleges Defendant regarded her as having COVID-19 after she worked at Providence and therefore reduced her employment hours. ECF No. 12-3 at PageID.198. In Defendant's view, however, Plaintiff's allegations only establish that she was regarded as being *exposed* to COVID-19. *See* ECF No. 13 at PageID.207–08 (noting that Plaintiff's proposed amended complaint does not allege that "[Defendant] observed her displaying any symptoms of COVID-19 whatsoever"). And mere exposure, Defendant argues, does not constitute a "physical or mental impairment" under the ADA. *Id.*

At this juncture, this Court need not consider any legally significant distinction between being having COVID-19 and being *exposed* to COVID-19.[4] Plaintiff's proposed amended complaint unequivocally alleges that Defendant "perceived anyone who worked in the Detroit area during the months of March, April and May 2020 as having" COVID-19. ECF No. 12-3 at PageID.198. Although Defendant might contend that this allegation is too conclusory or speculative to be accepted as true, the allegation seems to be a reasonable inference from Mango's email, which emphasized the risk of contracting COVID-19 at another hospital and "bringing [it] back." ECF No. 6-8 at PageID.69. And, as previously noted, Plaintiff need not produce "hard proof" to overcome a motion to dismiss. *See Medina-Rivera*, 713 F.3d at 140. Thus, this Court accepts as true Plaintiff's allegation that Defendant believed she had COVD-19.

Defendant also argues that Plaintiff's theory is absurd because it would mean that "any and all of [Defendant's] employees would be able to maintain a regarded-as [claim] . . . as a result of their employment during the pandemic."[5] ECF No. 13 at PageID.208; *see also id*. (claiming that Congress never "intended the ADA to have such a reach"). Some courts have used similar reasoning to reject COVID-19–related ADA claims. *See, e.g.*, *Champion v. Mannington Mills,*

---

[4] Some courts have made this distinction with the understanding that exposure alone would not qualify as an ADA-covered impairment. *See, e.g.*, *Parker v. Cenlar FSB*, No. CV 20-02175, 2021 WL 22828, at *6 (E.D. Pa. Jan. 4, 2021). Although that conclusion seems well reasoned, as a practical matter, the distinction between "regarded as having COVID-19" and "regarded as having been exposed to COVID-19" would seem difficult to implement. The reason is that an employer who believes her employee has COVID-19 and an employer who believes her employee has merely been *exposed* to COVID-19 are likely to behave similarly. Both employers, for example, might simply send the employee home or preclude her returning to work for some period. Accordingly, the merits of this distinction are best explored at summary judgment with the benefit of a fully developed record.

[5] This assertion is odd given that Defendant has elsewhere denied cancelling Plaintiff's hours due to COVID-19. *See, e.g.*, ECF No. 6 at PageID.20 (claiming that Plaintiff's hours were reduced "to comply with a now-rescinded Executive Order" and "to recover from a catastrophic flood that significantly impacted Midland County").

*Inc.*, 538 F. Supp. 3d 1344, 1350 (M.D. Ga. 2021) (reasoning that employee could not maintain "regarded as" claim against employer that sent her home due to COVID-19 because that "would mean that every person in the United States who was . . . sent home upon feeling sick during th[e] pandemic . . . would be disabled for purposes of the ADA").

As an initial matter, Defendant does not argue that the ADA is ambiguous, so any argument regarding legislative purpose is misplaced. *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) ("We usually interpret a statute according to its plain meaning, without inquiry into its purpose."); *In re Koenig Sporting Goods*, Inc., 203 F.3d 986, 988 (6th Cir. 2000) ("When a statute is unambiguous, resort to legislative history and policy considerations is improper.").

Moreover, an employer is not liable for disability discrimination merely because its employee clears the relatively low bar set by Rule 12(b)(6). The ADA provides multiple affirmative defenses that may be raised and decided at summary judgment. *See* 42 U.S.C. § 12102(3)(B) (providing that "regarded as" liability does not extend to "impairments that are transitory and minor"); *id.* § 12113(b) (providing that employers "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace"); *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) ("[The] 'transitory and minor' limitation is an affirmative defense that the employer bears the burden of proving . . . ." (citing 29 C.F.R. § 1630.15(f))); *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1027 (9th Cir. 2003) ("Because it is an affirmative defense, the burden of establishing a direct threat lies with the employer.").

Further, the EEOC has already opined that employers who exclude employees with COVID-19 from the workplace may rely on the "direct threat" defense.[6] *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, EEOC, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last updated Mar. 14, 2022).

Defendant might be frustrated with how Congress balanced the legal burdens between employer and employee in the ADA, but that does not mean that Congress's scheme is absurd. *Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) ("In statutory interpretation, an absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that 'no reasonable person could intend.'" (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237 (2012))).

For these reasons, Plaintiff has plausibly alleged that Defendant regarded her as having an ADA-covered impairment.

## C.

The next issue is whether Plaintiff has plausibly alleged an associational-discrimination claim. Title VII prohibits employers from discriminating against employees based on their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). That prohibition extends to discrimination against employees who associate with members of a protected class. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511–12 (6th Cir. 2009). To prevail on an associational-discrimination claim, Plaintiff must show that "1) she was discriminated against at

---

[6] Other courts have looked to EEOC guidance in addressing similar questions, such as whether COVID-19 constitutes a disability. *See, e.g.*, *Baum v. Dunmire Prop. Mgmt.*, No. 21-CV-00964-CMA-NYW, 2022 WL 889097, at *5 (D. Colo. Mar. 25, 2022); *Brown v. Roanoke Rehab. & Healthcare Ctr.*, No. 3:21-CV-00590-RAH, 2022 WL 532936, at *3 (M.D. Ala. Feb. 22, 2022).

work 2) because she associated with members of a protected class." *Id.* at 513. Unlike other circuits, the Sixth Circuit has held that, in considering whether Title VII applies, "the *degree* of the association is irrelevant." *Id.* (emphasis added); *see also id.* ("While one might expect the degree of an association to correlate with the likelihood of severe or pervasive discrimination . . . that goes to the question of whether the plaintiff has established a hostile work environment, not whether he is eligible for the protections of Title VII in the first place.")

Plaintiff alleges Defendant reduced her hours for associating with primarily African American patients while working at Providence. *See* ECF No. 12-3 at PageID.198–99. In response, Defendant argues (1) that Plaintiff did not "associate" with those patients for purposes of Title VII, and (2) that Plaintiff has not plausibly alleged a causal connection between her alleged association and the reduction in her hours. *See* ECF No. 6 at PageID.29–31.

Defendant's first argument is uncompelling. Plaintiff specifically alleges that "[her] work at Providence Southfield hospital required her to associate with, and provide medical treatment to, mainly African-American patients." *See* ECF No. 12-3 at PageID.199. Insofar as Defendant argues Title VII does not encompass treatment relationships, the Sixth Circuit has already rejected similar attempts to police the definition of "association." *See Barrett*, 556 F.3d at 512 (reversing summary judgment for employer because district court erroneously held that employees who merely had "friendly, casual relationship" with African American coworkers had not shown "association" under Title VII).

Defendant's second argument, by contrast, underscores a legitimate problem with Plaintiff's proposed amended complaint. Although Plaintiff need not produce "hard proof" at the pleading stage, *see Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 140 (1st Cir. 2013), she must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v.*

- 12 -

*Twombly*, 550 U.S. 544, 555 (2007). At a minimum, she must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Defendant is correct that, in this respect, Plaintiff's associational-discrimination claim falls short.

Plaintiff's causal connection consists of a single, bare allegation that "[t]he cancellation of Plaintiff's shifts was a discriminatory action against Plaintiff for [her] association with members of a protected group." ECF No. 12-3 at PageID.199. Plaintiff provides no additional context, details, or explanation. And she does not point to any instance in which Mango remarked on African American patients or her association with them.

In her briefing, Plaintiff attempts to connect the dots by noting multiple instances in which Mango cautioned against working "down in Detroit," a city that is predominantly African American. *See* ECF No. 10 at PageID.137–38. But in those instances, Mango mentioned Detroit only in the context of the worsening COVID-19 pandemic. *See id.* Plaintiff even acknowledges in her complaint that, at the time of Mango's email, Detroit was a "hotspot" for COVID-19 infections. *See* ECF No. 12-3 at PageID.195. Accordingly, there is no basis for inferring that, by cautioning MidMichigan employees about working in Detroit, Mango was expressing some racial animus toward African Americans, or that Plaintiff's association with African Americans was a motivating factor in Mango's decision to reduce her hours.

Because Plaintiff has not plausibly alleged a causal connection between her association with African American patients and the reduction in her hours, her associational-discrimination claim will be dismissed.

**D.**

The final issue is whether Plaintiff has plausibly alleged a retaliation claim. Both the ADA and Title VII prohibit employers from retaliating against employees for engaging in what courts refer to as "protected activity." *See* 42 U.S.C. § 12203(a); *id.* § 2000e-3(a); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013) ("Title VII prohibits retaliatory conduct by an employer when an employee engages in protected activity."). "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (quoting *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 484 (S.D.N.Y. 2013)). The hallmark example of protected activity is participation in statutory enforcement proceedings. *See* 42 U.S.C. § 12203(a); *id.* § 2000e-3(a)

After Mango reduced her hours, Plaintiff filed a charge with the EEOC and had her attorney send a letter to Defendant. *See* ECF No. 12-3 at PageID.195–96. The letter claimed that Defendant had violated the ADA by reducing Plaintiff's hours based on "its perception that [she] [was] suffering from a physical impairment." ECF No. 10-5 at PageID.157. According to Plaintiff, Defendant responded to the letter by cancelling more of her shifts in May 2020. ECF No. 12-3 at PageID.196. Defendant also allegedly gave her cancelled shifts to CRNAs who were at or close to overtime, apparently in violation of Defendant's overtime policy. *Id.*

Defendant first argues that Plaintiff has not plausibly alleged a causal connection between her alleged protected activity and her shift cancellations because she did not file an EEOC charge until June 2020, *after* her May shifts were cancelled.[7] *See* ECF No. 6 at PageID.31–32. But even if that were true, it would not foreclose Plaintiff's retaliation claim because her attorney sent his

---

[7] Plaintiff apparently disputes this claim. *See* ECF No. 12-3 at PageID.194 (alleging that she filed the EEOC charge "on or about April 2, 2020").

letter on April 17, 2020—at least two weeks *before* Defendant allegedly cancelled the May shifts. *See* ECF No. 12-3 at PageID.195–96.

Defendant next argues that Plaintiff's attorney's letter does not constitute protected activity because it does not adequately "oppose" discriminatory conduct. *See* ECF No. 13 at PageID.209–10. Defendant relies primarily on *Love v. Electric Power Board of Chattanooga, EPB*, 392 F. App'x 405 (6th Cir. 2010) (unpublished), in which the Sixth Circuit affirmed the dismissal of a retaliation clam because, among other things, the employee failed to adequately allege a protected activity. But in *Love*, the employee merely lodged "[v]ague charges of discrimination [and] [claims] that 'management [was] "out to get [him]"'" *Id.* at 409. Here, Plaintiff's attorney sent a letter that specifically outlined the conduct complained of and accused Defendant of violating the ADA. *See* ECF No. 10-5 at PageID.156–57. Drawing all reasonable inferences in Plaintiff's favor, the letter clearly constitutes "an action taken to protest or oppose a statutorily prohibited discrimination." *See Rorrer*, 743 F.3d at 1046.

Defendant also argue that Plaintiff's attorney's letter was not protected activity because Plaintiff could not have "reasonably believed" that "[s]he was opposing acts of discrimination." *See* ECF No. 13 at PageID.210 (quoting *David v. ANA Television Network, Inc.*, 208 F.3d 213 (6th Cir. 2000) (unpublished table decision)). But, as explained previously, Plaintiff's proposed amended complaint plausibly states a claim for disability discrimination. *See* discussion *supra* Section III.B. So Defendant's contention that Plaintiff's belief was unreasonable must be rejected.

Accordingly, Plaintiff has plausibly alleged a retaliation claim.

### E.

In summary, Plaintiff's proposed amended complaint plausibly states a claim for disability discrimination and retaliation in violation of Title VII and the ADA. Consistent with the Federal

Rules' instruction that leave to amend should be "freely given," FED. R. CIV. P. 15(a), Plaintiff may file her proposed amended complaint except for associational-discrimination claim. As explained in Section III.C., *supra*, Plaintiff has not plausibly alleged that she was discriminated against for associating with African American patients, so her associational-discrimination claim must be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 6, is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion is **GRANTED** with respect to Plaintiff's associational-discrimination claim. Defendant's Motion is **DENIED** in all other respects.

Further, it is **ORDERED** that Plaintiff's Motion for Extension of Time to File Response, ECF No. 9, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint, ECF No. 12, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion is **DENIED** with respect to filing an amended associational-discrimination claim. Plaintiff's Motion is **GRANTED** in all other respects.

**This is not a final order and does not close the case.**

Dated: July 22, 2022                                   s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge